## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No: 8:14-cv-2189-T-30JSS

JAMES M. ENRIGHT, 1025 W MICHIGAN LAND TRUST, 5912 31ST STREET LAND TRUST, PINELLAS COUNTY TAX COLLECTOR, SUNSHINE STATE TAX LLC, CITRUS CAPITAL, LLC and JAMES ENRIGHT TRUST,

    Defendants.

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion for Summary Judgment Against Defendant James M. Enright and Default Judgment Against Defendants 1025 W. Michigan Drive Land Trust, 5912 31st Street Land Trust, and the James Enright Trust (collectively, the "Trusts") (Dkt. #47). Defendants have not responded to the Motion or the Court's Order to Show Cause (Dkt. #48).

The Plaintiff in this case, the United States, is seeking to reduce to judgment federal income tax liabilities assessed against Defendant James M. Enright for the years 2000 through 2008 and to foreclose federal tax liens that, the United States alleges, attach to properties held in the name of trusts he created. (Dkt. 14, ¶ 1). Defendant Enright generally denies his liability, describes the United States in this case as "a fiction of law," and claims

that, in any event, he has "a security interest in the subject matter of the complaint that supersedes [the United States']." (Dkt. 20). As for the Defendant Trusts, no counsel has appeared on their behalf and an order of default was entered against them by the Clerk of the Court on March 23, 2015 (Dkt. 30). The Court has reviewed the filings, the record evidence, and the applicable law and has concluded, for the reasons discussed below, that the motion for summary judgment against James Enright and default judgment against the Trusts should be granted.

## FACTUAL BACKGROUND

According to the United States' complaint and supporting affidavits, Enright did not pay federal taxes in years 2000 through 2004 and filed fraudulent tax returns in years 2005 through 2008. (Dkt. 14; Dkt. 47, Ex. 1, Shatraw Declaration, Ex. A-1 – A-8). A delegate from the Secretary of Treasury made assessments for these tax liabilities and, as of August 16, 2015, Enright owed the IRS $1,225,939.80. (Shatraw Decl. ¶ 4).[1] The United States also filed a notice of federal tax liens against Enright with the Clerk of the Court for Pinellas County, Florida, for tax years 2000 through 2008. (Id. ¶ 8, Ex. C).

The United States alleges that Enright is the true owner of two pieces of real property located in Pinellas County, which Enright purchased in 2001 and 2003 respectively. After the United States filed its federal tax liens, Enright transferred title of

---

[1] Those assessments were collated and calculated by IRS Revenue Officer John Shatraw. His calculation—supported by Certificates of Assessment and itemized by tax year, assessment, penalties, and interest—is contained in his declaration, Dkt. 47, Ex. 1, and because of its length and density, is incorporated by reference.

these properties to trusts he had created. On the same day, November 23, 2004, he transferred one property to the 1025 W. Michigan Drive Land Trust and the other to the 5912 31st Street Land Trust. (Id. ¶¶ 11, 20). The trusts, with Enright as trustee, each paid $1 for their respective properties. (Id. ¶¶ 13, 22). After transfer, Enright continued to collect rent from the properties and pay expenses for their maintenance and upkeep. (Id. ¶¶ 12, 21). Continuing its pursuit of Enright's unpaid taxes, on July 22, 2010, a Secretary of the Treasury delegate filed a notice of federal tax lien in the official records of Pinellas County against these trusts, "as Nominee[s] of James M. Enright." (Id. ¶¶ 17, 26, Ex. G, K).

But Enright transferred the properties again. On November 4, 2014, after the United States filed its complaint against Enright, both trusts conveyed title of their respective properties to a new trust, the James Enright Trust. The James Enright Trust, with Enright as its trustee, paid $10 per property. (Id. ¶¶ 16, 25).

About a month later, on December 9, 2014, Enright filed for bankruptcy, and this proceeding was temporarily stayed. (Dkt. 19). That bankruptcy case was soon thereafter dismissed, however, upon the court's finding that Enright had failed to correct multiple deficient filings. (Dkt. 47, Ex. 21). On the United States' motion, this proceeding was reopened on February 2, 2015 (Dkts. 21, 22).

## DISCUSSION

The United States now seeks to put an end to its cat-and-mouse pursuit of Enright's unpaid taxes. In its motion, the United States specifically asks the Court to do three things: 1) enter summary judgment against Enright for his tax liability and, in doing so, declare that federal tax liens attach to Enright's properties even if held by the Trusts, mere

nominees of Enright; 2) enter default judgment against the Trusts; and 3) order the foreclosure of the Enright's properties, now being held by the James Enright Trust, to satisfy Enright's liability. The Court will first address summary judgment against Enright and the United States' claims to property liens, then default judgment against the Trust, and, last, the propriety of foreclosure.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, the record must reveal a "*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original). Facts are material if, under the applicable substantive law, they might affect the outcome of the case. *See id*. And disputes over those facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

4

there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations will not suffice. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Neither will "a mere scintilla of evidence supporting" the non-movant's claims. *Walker v. Darby*, 911 F.2d 1573, 1577 (1th Cir. 1990) (internal quotations omitted). The non-movant must instead present facts that are significantly probative to support those claims. *Anderson*, 477 U.S. at 248-49 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968) (requiring that "sufficient evidence supporting the claimed factual dispute be shown to [defeat the motion and] require a jury or judge to resolve the parties' differing versions of the truth.")).

Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**Enright's Income Tax Liability**

An assessment is a procedure by which the IRS records the liability of a taxpayer. *Behren v. U.S.*, 82 F.3d 1017, 1018 n. 1 (11th Cir. 1996) (citing 26 U.S.C. § 6203; 26 C.F.R. § 301.6203-1). To reduce that assessment to a judgment, "the Government must first prove that the assessment was properly made." *U.S. v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006). Submitting Certificates of Assessment creates a presumption that the assessments were proper. *Id.* Furthermore, the Certificates are sufficient to show the amount still owed. *U.S. v. Chila*, 871 F.2d 1015, 1017-1018. And once the Certificates are provided, the burden of proof shifts to the taxpayer, who "must then prove that the assessment is erroneous in order to prevail." *White*, 466 F.3d at 1248.

The United States has submitted Certificates of Assessment and official transcripts for each tax year at issue in this case. (Shatraw Decl., Exs. 1-8). The United States has also submitted the declaration of IRS Revenue Officer John Shatraw, who, using these Certificates, calculated Enright's tax liability. This evidence creates a presumption of correctness that Enright must rebut to defeat summary judgment.

Enright has not done this. In fact, he has not meaningfully challenged any of the evidence the United States has presented. Instead, he has only made general denials: "It is denied the United States of America is the real party in interest;" "It is denied that Plaintiff has stated a claim upon which this relief should be granted;" "[I]t [is] denied the Plaintiff is operating with clean hands and good faith." (Dkt. 20, pp. 1-2) (alterations for emphasis omitted). These conclusory claims alone cannot defeat summary judgment. *See Avirgan v. Hull*, 932 F.2d at 1577. Summary judgment against Enright for his federal tax liability, in the amount presented by IRS Revenue Officer John Shatraw, is therefore appropriate.

**Tax Liens on Enright's Properties**

Section 6321 of the Internal Revenue Code provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amounts . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The breadth of this provision "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *U.S. v. Nat'l Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Furthermore, the tax lien arises by operation of law when the assessment is made. 26 U.S.C. § 6322.

The Court has concluded that summary judgment against Enright for his tax liability is appropriate. Therefore, by operation of the relevant provisions of the Internal Revenue Code, the Court finds that a lien attaches to "every interest in property that [Enright] might have." *U.S. v. Nat'l Bank of Commerce*, 472 U.S. at 713.

The United States claims that Enright has sought to render this operation of law meaningless by transferring title of his properties to the Trusts, which he created and for which he served as Trustee. Although Enright has not responded to the United States on this point, the Court need not consider his motivations. *U.S. v. Dornbrock*, No. 06-61669-CIV, 2008 WL 769065, *4 (S.D. Fla. Jan. 17, 2008) ("The nominee theory may be established without a showing of fraud."), *aff'd*, 309 Fed.Appx. 359 (11th Cir. 2009). For the reasons that follow, the United States' lien attaches to the properties Enright transferred to the Trusts.

**The Trusts Held Title to Enright's Properties as Nominees**

A taxpayer's federal tax lien attaches to any interest they hold in property, including property held by a taxpayer's "alter ego." *G.M. Leasing Corp. v. U.S.*, 429 U.S. 338, 350-51, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). One such alter ego is the nominee, an entity that "holds bare legal title to property for the benefit of another." *Black's Law Dictionary* (7th Ed. 1999); *see U.S. v. Gilbert*, 244 F.3d 888, 902 n. 37 (11th Cir. 2001). The "nominee theory" focuses on the relationship between the taxpayer and the property in an effort to discern whether the taxpayer, for tax purposes, has technically transferred legal title while retaining all or some of the benefits of being the true owner. *Dornbrock*, 2008 WL 769065,

at *4, *aff'd*, 309 Fed.Appx. 359 (11th Cir. 2009) (citing *May v. U.S.*, No. 07-10531, 2007 WL 3287513, *1 (11th Cir. 2007)).

When determining whether a taxpayer conveyed property to a nominee, district courts in Florida consider the following factors: (1) whether the taxpayer continues to exercise dominion and control over the property after transfer; (2) whether the property was transferred in anticipation of collection activity; (3) the amount of consideration, if any, paid for the transfer; (4) the relationship between the taxpayer and the new title holder; and (5) whether the taxpayer continues to pay for the property's expenses. *Dornbrock*, 2008 WL 769065, at *4; *accord Scoville v. U.S.*, 250 F.3d 1198, 1202 (8th Cir. 2001); *Oxford Capital Corp. v. U.S.*, 211 F.3d 280, 284 (5th Cir. 2000).

And though courts in this district have cautioned against applying these factors too rigidly, *see Dornbrock*, 2008 WL 769065 at *4, the Court has no need for such caution here—because the record demonstrates that every factor is present. Enright continues to collect rents and pay for upkeep on the properties. (Shatraw Decl. ¶¶ 12, 16, 21, 25). Enright transferred the properties when he knew or should have known of collection activities: at the time of his first conveyance, Enright had already been assessed additional taxes by the IRS for the 2001 tax year; at the time of his second, to the James Enright Trust, Enright had already been served with a complaint in this case and had filed a response. (Id. ¶¶ 16, 25). The most consideration paid for any property by a trust was $10. (Id. ¶¶ 13, 16, 22, 25). And Enright has served as trustee for each of the three trusts.

Enright has not disputed any of these facts. The Court therefore concludes that the Trusts were mere nominees, and that the United States' federal tax lien attaches to the properties now being held by the James Enright Trust.

The United States has proposed an alternate theory for attaching its tax lien to the transferred properties: that Enright's transfers were fraudulent under Florida law. *See Thompson v. Adams*, 685 F. Supp. 842, 845 (M.D. Fla. 1988) ("[W]here a taxpayer disposes of property prior to the existence of federal tax liens, the United States may seek relief under the applicable fraudulent conveyance law of the particular state in which the property and taxpayer are located.") (citing *United States v. Ressler*, 433 F. Supp. 459, 463 (S.D. Fla. 1977), *aff'd* 576 F.2d 650 (5th Cir. 1978)).[2]

Florida's fraudulent transfer law has the same effect, for tax purposes, as the federal nominee theory, and courts applying the law look for some of the same factors. *See* Fla. Stat. Ann. § 726.105(2). Having concluded that the Trust were the nominees of Enright, the Court has rendered the need for such an analysis moot. The Trusts were Enright's nominees, and the Court concludes that the United States' federal tax lien attaches to the properties Enright transferred to them under that theory.

### DEFAULT JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a party who has failed to plead in response to a complaint. Such a

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former United States Court of Appeals for the Fifth Circuit decided prior to the close of business on September 30, 1981.

9

judgment is appropriate "against a defendant who never appears or answers a complaint, for in such circumstances, the case never has been placed at issue." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, 803 F.2d 1130, 1134 (11th Cir. 1986). Accordingly, all well-pleaded allegations of fact against that defendant will be deemed admitted. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Mere conclusions of law, however, will not. *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). A plaintiff must provide "a sufficient basis in the pleadings for the judgment entered." *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations omitted). A "sufficient basis" means satisfying the court that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted. *See Nishimatsu Const. Co.*, 516 F.2d at 1206; *see also Surtain*, 789 F.3d at 1245 (concluding that, conceptually, a motion for default judgment should be treated like a reverse motion to dismiss for failure to state a claim).

When evaluating the complaint, a court must determine "whether [it] contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations omitted)). And this plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Surtain*, 789 F.3d at 1245 (internal citations omitted).

**Default Judgment Against the Trusts is Appropriate**

Although Enright did respond in this case, it is well settled in this Circuit that while he can represent himself *pro se*, he cannot make an appearance on behalf of the Trusts. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985); *Callaway v. Hornbake*, No. 2:11-CV-85-FtM-99DNF, 2012 WL 333769, at *3 (M.D. Fla. Feb. 1, 2012); *U.S. v. Lena*, No. 05-80669-CIV, 2007 WL 4578336, at *1 (S.D. Fla. Dec. 27, 2007). The Trusts did not respond to the complaint, and the Clerk of the Court entered their default on March 23, 2015.

The Court also has jurisdiction over the claims against the Trusts as provided by Title 28 of the United States Code. 28 U.S.C. § 1340 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . . ."); 28 U.S.C. § 1345 ("[T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or any agency or officer thereof . . . .").

Finally, the complaint adequately alleges against the Trusts claims for which relief may be granted. The complaint states specific facts that, if true, would make the Trusts the nominees of Enright. These facts include the following: the dates on which Enright acquired his properties; the dates on which he transferred those properties to the Trusts; the dates on which Enright incurred tax liability; the fact that Enright's transfers to the Trusts took place after he had incurred tax liability; the amount of consideration paid for each transfer; the fact that Enright continued to collect rent from the properties after transfer. (Dkt. 14, pp. 7-9). Based on these factual allegations, and for reasons discussed above, the

Court concludes that the United States' complaint provides a sufficient basis to conclude that the Trusts are liable as alleged. Its motion for default judgment will be granted.

**Foreclosure of Trust Properties is Appropriate**

Although styled as a motion for summary judgment and default judgment, the United States also asks the Court to resolve this case completely by ordering the foreclosure of Enright's Trust properties. Such a request of the Court is necessary. As discussed above, a tax lien attaches to property by operation of law; however, the lien is not self-executing. *U.S. v. Nat'l Bank of Commerce*, 472 U.S. at 720. The United States must petition for sale of the lien property, after which:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interest of the parties and of the United States.

26 U.S.C. § 7403(c).[3]

The Court concludes that the parties to this action have been duly notified. As to the merits of action, the Trusts held (and, in the case of the James Enright Trust, still hold) Enright's properties as nominees. Enright has remained the properties' true owner, and therefore Enright's transfers do not defeat foreclosure—a finding that courts in this Circuit have consistently reached in similar cases. *See e.g.*, *U.S. v. Hunter*, No. 5:14-cv-17-Oc-

---

[3] The United States and the other parties in interest in this case—Pinellas County Tax Collector; Sunshine State Tax, LLC; and Citrus Capital, LLC—have stipulated to their priority of claims to the properties. (Dkt. 46).

10PRL, 2015 WL 4068374, at *7 (July 2, 2015); *Dornbrock*, 2008 WL 769065 at *5-6; *U.S. v. Bahrs*, No. 1:05-CV-138-SPM, 2006 WL 2507574, at *3 (N.D. Fla. Aug. 29, 2006); *cf. U.S. v. Persaud*, No. 6:02-CV-1528-ORL-22JGG, 235 F.R.D. 696, 701 (M.D. Fla. 2005). Foreclosure of these properties is appropriate, which the Court will order separately in its final judgment.

It is ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment Against Defendant James M. Enright and Default Judgment Against Defendants 1025 W. Michigan Drive Land Trust, 5912 31st Street Land Trust, and the James Enright Trust (Dkt. #47) is GRANTED.

2. A Final Judgment will be entered separately.

**DONE** and **ORDERED** in Tampa, Florida, this 6th day of October, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2014\14-cv-2189 SJ and Default Judgment.docx